BOUTALL, Judge.
These are suits by beneficiaries of decedents Floyd Sanchez and Joseph Morvant on a policy of group accident insurance issued by Reliance Insurance Co. for benefits due them. The trial court rendered judgment for the plaintiffs, granting them the benefits plus statutory penalties and attorney’s fees for arbitrary failure of the insurance company to remit. The insurance company appeals.
*602 The facts were all stipulated prior to trial, and the questions presented to us consist of (1) coverage under the terms of the policy and (2) the award of statutory penalties and attorney’s fees.
On April 3, 1975 Avondale Shipyards had occasion to inspect one of their floating dry docks in the Mississippi River which had been damaged by collision the previous day. The inspection party of six men, including decedents Floyd Sanchez and Joseph Mor-vant, boarded the MV BESTA LOU at Avondale’s dock with Mr. Sanchez piloting. They travelled 1000 feet upstream to the upriver end of the dry dock. The boat was allowed to drift downstream slowly with power on against the current, so that the boat could hold its position in the river as inspections were made. The plan was to inspect the dry dock and thereafter inspect the barge RICHMOND moored at Avon-dale’s dock some 300 yards downstream, and then tie up directly downstream to the portside of the barge UM-906, which was the outboard of a two-barge tier lashed to the S.S. PACIFIC BEAR, also moored at Avondale’s dock. Several other barges were also lashed alongside the S.S. PACIFIC BEAR behind the UM-906.
As Mr. Sanchez allowed the boat to drift around to the side of the barge, the wind and current pushed the MV BESTA LOU towards the raked bow of the UM-906. Despite the evasive maneuvers of Mr. Sanchez, MV BESTA LOU’s stern struck under the bow rake of the UM-906 and the strong current then pivoted the boat downwards. The starboard gunwale submerged and the MV BESTA LOU capsized.
Mr. Sanchez shouted for everyone to jump clear as the boat went under. One man, Round, jumped to safety onto the bow of the UM-906. The other five men were swept along with the boat under the UM-906, came up, and were then swept under the second tier of moored barges. Four men emerged, only to be swept beneath a third tier of barges. Only one survived, Mr. Robert Oehmichem. Mr. Morvant’s body was recovered from the river along with the bodies of two others. Mr. Sanchez’s body was recovered downriver some 52 days later. The MV BESTA LOU was seen being swept downriver but has never been found.
The policy in question was issued by Reliance Insurance Co. to Avondale Shipyards, insuring Avondale’s employees against specified losses, including accidental bodily injury and death arising from certain hazards described therein. The operative clause in the present case provides benefits for loss of life as follows:
“The hazards against which insurance is granted under this Policy are all those to which an Insured may be exposed during travel and sojourn on the business of the Policyholder, provided such travel is to a point or points located away from the premises of the Policyholder in the city of permanent assignment. The following shall specifically qualify the above:
“(a) Coverage begins at the actual start of an anticipated trip whether it be from an Insured’s place of employment, his home or other location. Coverages terminate upon his return to his home or place of employment, whichever shall first occur.
“(b) Commutation travel is excluded from coverage, except for interplant travel not part of the Insured’s normal daily routine;”********
Appellants argue that at all times the decedents were on the premises of their employer, Avondale Shipyards, citing many workmen’s compensation cases which expand the limitations of employer’s “premises”. Appellees argue with equal fervor that at the time of the casualty, they were in the Mississippi River which is not part of Avondale’s premises.
The language of the policy is clear. Coverage only occurs when an Avondale employee is (1) on travel and sojourn; (2) on Avondale’s business; (3) to a point located away from Avondale’s premises. Once this threefold condition is met, then under subsection (a) coverage would begin as soon as the employee crosses Avondale’s threshold.
Both parties stipulated that the second condition was met.
*603 In order to apply the facts of this case to the terms of the policy, we turn to Webster’s Third New International Dictionary, 1971 Ed. for definitions of the words used in the policy clause:
“Travel” on page 2432 is defined as “to go or proceed on or as if on a trip or tour” and as a noun on page 2433 is defined as “the act of travelling . . ” and “a journey esp. to a distant or unfamiliar place”.
“Sojourn” has only one meaning. On page 2166 we find as a noun it is “a temporary stay” and on page 2167 as a verb it is “to stay as a temporary resident”.
These two words are joined by the conjunctive “and”.
The testimony of the two survivors at the U.S. Coast Guard investigation is in the record by joint stipulation and gives us the purpose of the trip. This was to travel alongside the dry dock and the barge “RICHMOND” in order to inspect them, and to return to or near the point of embarkation at Avondale. There is no evidence of any intended “stay” of any duration at any place.
“Away” is defined, again in Webster’s New Third International, on page 152 as an adverb indicating “from this or that place”, “from contact of close association”, and again “at a little distance”.
From this it can be seen that under the policy terms, the “travel and sojourn” to a point “away from the premises” does not contemplate movement within or alongside of these premises. The point travelled to must be away from, or a distance from, these premises. It cannot be contiguous with the premises for coverage to apply.
Without deciding whether parts of the Mississippi River form part of Avon-dale’s premises, it is obvious that the dry dock, as well as the barges, such as the “RICHMOND” and “UM-906” moored to Avondale’s dock, are definitely so, forming part of Avondale’s work area and jobs to be worked on. This is necessary from the nature of Avondale’s business as a shipyard.
The route of the MV BESTA LOU was at all times alongside these premises. Although not physically in contact with the dry dock and various barges, it cannot logically be said to have been travelling to a point away from them, since the very purpose of the episode was to go alongside in order to inspect them. Reading the policy clauses together as a whole, it seems clear that the hazards to be covered are those in the nature of a business trip away from the premises or at least travel of some extent to a point some distance removed, contemplating a stay of some duration. Under the facts herein, a trip of some 1000 feet which, considering Avondale’s “premises”, arguen-do, in its most restricted limits, was at all times immediately adjacent to those premises, does not meet the first and third conditions of policy coverage.
We can find no ambiguities in the policy terms as relating to the present facts, and we have no authority to alter the unambiguous terms of a policy, which is a contract between the parties. Monteleone v. American Employers Insurance, 239 La. 773, 120 So.2d 70 (1960).
One additional argument raised by appel-lees’ counsel in their supplemental brief arises under subsection (b) of the quoted policy provisions as “interplant travel”.
Appellees contend that the effect of the inclusion of the interplant travel provision is to cause an ambiguity because inter-plant travel is not a sojourn. However, interplant travel is to be considered in connection with the exclusion of commutation travel and both together specifically qualify the general hazards coverage. Primarily, we do not see any ambiguity in the provisions referred to. Additionally the travel herein is not interplant travel.
The stipulation entered into by all parties is “That Avondale Shipyards operates a plant in Avondale, one in Westwego, one in Waggaman, three in Harvey, and one in Morgan City”. There is no indication in the record that the MC BESTA LOU was engaged in interplant travel, but on the contrary the decedents embarked and were to *604 disembark from the Avondale La. plant which extends some distance along the bank of the Mississippi River in both directions from these points.
Accordingly, we find no policy coverage entitling plaintiffs to the benefits awarded. For this reason, it is unnecessary for us to discuss the second question presented to us, that of award of the statutory penalties and attorneys’ fees.
Accordingly, the judgments are reversed and plaintiff’s claims are dismissed.

REVERSED.